IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA ATTERBURY, individually and on behalf of all others similarly situated, 7007 Andrews Ave. Philadelphia, PA 19138,<br><br>       Plaintiff,<br>  vs.<br><br>EARN COMPANY 555 Diamond St Philadelphia, PA 19122<br><br>CREDIT EXTERMINATORS INC. 555 Diamond St Philadelphia, PA 19122<br><br>SPRINKLE OF JESUS CORP. 555 Diamond St Philadelphia, PA 19122<br><br>CASEY OLIVERA a.k.a. DANA CHANEL 555 Diamond St Philadelphia, PA 19122<br><br>DONNELL MORRIS a.k.a. PRINCE DONNELL 555 Diamond St Philadelphia, PA 19122<br><br>CASSANDRA OLIVERA a.k.a. APRIL 555 Diamond St Philadelphia, PA 19122<br><br>NAKIA RATTRAY a.k.a. JAMES ALLEN a.k.a. UNCLE MAJIC THE HIP HOP MAGICIAN, 555 Diamond St Philadelphia, PA 19122<br><br>       Defendants. | CLASS ACTION<br><br><br><br><br>NO.<br><br><br><br><br><br><br>**CLASS COMPLAINT** |

1

**I.   INTRODUCTION**

1. This is a consumer class action for damages under the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.* ("CROA"). Defendants are a combination of corporate entities and their owners, agents, and employees who hold themselves out as providing credit repair services to consumers in exchange for money, or who have contracted with consumers seeking credit repair services. Defendants have operated under several names—sometimes using Credit Exterminators, and other times using the nonexistent, unincorporated association called the Earn Company. Indeed, most of the individual Defendants have concealed their true identities behind pseudonyms.

2. As part of their course of business, Defendants Earn Company, Credit Exterminators, and their agents and/or employees charge their consumer clients hundreds of dollars in illegal upfront fees, followed by a minimum six-month term during which consumers are forced to shell out hundreds of dollars more each month. As part of their course of business, these Defendants use contracts that unlawfully attempt to waive the CROA rights of its consumer clients, which require payment before the performance of any services, and which fail to include the most basic disclosures required by CROA. Defendants' failure to provide the required CROA disclosures prohibited it from performing any credit repair services for those consumers, and Defendants' use of illegal waivers renders all of the credit repair contracts void.

3. Dozens of consumers have complained about Defendants' fraudulent and deceptive business practices, including that Defendants fail to provide the services promised, despite the hefty upfront fees. Nonetheless, Defendants persisted in their unlawful practices.

4. Accordingly, Plaintiff Christina Atterbury brings this class action on behalf of herself and others similarly situated for damages under CROA.

## II. JURISDICTION

5. Jurisdiction arises under the CROA, 15 U.S.C. § 1679 and 28 U.S.C. § 1331.

6. *In personam* jurisdiction exists and venue is proper, as Defendants reside in this district, the offending conduct in this district, and Plaintiff is situated in this district.

## III. PARTIES

7. Plaintiff Christina Atterbury is a consumer who resides in Philadelphia, Pennsylvania at the address captioned above.

8. Defendant Earn Company ("Earn") is an unincorporated association of which the other Defendants are members, agents, and/or employees.

9. In Pennsylvania, no company is incorporated under the name "Earn Company."

10. Defendant Credit Exterminators Inc. ("Credit Exterminators") is a Pennsylvania corporation with a principal place of business as captioned.

11. Credit Exterminators is one of several entities that Defendants require its consumer clients to contract with before performing any credit repair services.

12. Defendant Sprinkle of Jesus Corp. ("Sprinkle of Jesus") is a Pennsylvania corporation with a principal place of business as captioned. Sprinkle of Jesus is also incorporated in New York under the same name.

13. Defendant Casey Olivera a.k.a. Dana Chanel ("Olivera") is an adult individual who holds herself out as providing credit repair services in exchange for money, and whose principal place of business is located at 555 Diamond Street, Philadelphia, PA 19122.

14. Defendant Donnell Morris a.k.a. Prince Donnell ("Morris") is an adult individual who holds himself out as providing credit repair services in exchange for money, and whose principal place of business is located at 555 Diamond Street, Philadelphia, PA 19122.

3

15. On information and belief, Olivera and Morris are owners of Earn, Credit Exterminators, and Sprinkle of Jesus.

16. Defendant Cassandra Olivera a.k.a. April ("April") is an adult individual who holds herself out as providing credit repair services in exchange for money, and whose principal place of business is located at 555 Diamond Street, Philadelphia, PA 19122.

17. On information and belief, April is the CEO of Earn and Credit Exterminators.

18. Defendant Nakia Rattray a.k.a. Uncle Majic the Hip Hop Magician ("Rattray") is an adult individual who holds himself out as providing credit repair services in exchange for money, and whose principal place of business is located at 555 Diamond Street, Philadelphia, PA 19122.

19. Defendants Olivera, Morris, April, and Rattray are related. Rattray is the father of April and Olivera, who are sisters. Olivera and Morris are married.

20. Numerous videos and photos posted publicly to Instagram and other online social media show Olivera, Morris, April, and Rattray representing that they can or will provide advice or assistance to consumers regarding their credit in exchange for purchasing a plan.

21. Defendants Earn, Credit Exterminators, and Sprinkle of Jesus are vicariously liable for the acts of their agents, Olivera, Morris, April, and Rattray, as applicable.

22. When acting on behalf of Earn and/or Credit Exterminators, Defendants Olivera, Morris, April, and Rattray all acted with the common purpose of selling, advertising, and providing credit repair services in exchange for money.

23. Defendants Olivera, Morris, April, and Rattray received money or other consideration in exchange for credit repair services provided in their capacities as employees or agents of Earn and/or Credit Exterminators.

IV. **STATEMENT OF CLAIM**

24. Christina Atterbury is a consumer who resides in Philadelphia, PA.

25. On or about April 23, 2020, Ms. Atterbury saw marketing materials posted by one or more Defendants on social media advertising credit repair services. In those marketing materials, one or more Defendants claimed that their services raised the credit scores of consumers.

26. Ms. Atterbury was interested in improving her credit, so she followed the instructions in the marketing materials to send a direct message through a social media account to obtain more information.

27. April responded to Ms. Atterbury's direct message, stating that Ms. Atterbury would need to pay an initial $400 fee to set up her account, followed by monthly payments of $320.

28. Ms. Atterbury decided to proceed with the purchase of the credit repair services offered, so April emailed Ms. Atterbury a package of contract documents to sign.

29. Included in the package of documents that Ms. Atterbury was required to sign in exchange for credit repair services was a "Credit Repair Service Agreement" and "Authorization for Credit Repair Action," which is referred to herein as the "Credit Repair Contract."

30. The Credit Repair Contract contains several inconsistencies and unlawful provisions, and operates as a deception upon consumers.

31. The CROA prohibits credit repair organizations from charging or receiving any money for the performance of any agreed-to service before such service is "fully performed." 15 U.S.C. § 1679b(b).

32. The CROA also makes it unlawful for any person to "engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization." 15 U.S.C. § 1679b(a)(4).

33. The Credit Repair Contract requires payment of upfront fees before the performance of any services under the Credit Repair Contract.

34. The Credit Repair Contract specifies in multiple places that services will not be provided until payment of the upfront fees, stating:

- "Customer acknowledges that payment of Fees is authorization for us to begin providing information/ education."

- "We will start providing product a week after their [sic] customer has signed up and customer payment of Fees."

- "All Fees are due once the services have been agreed upon."

- "Customer acknowledges that payment of Fees is authorization for us to begin providing education in your back portal. We will start providing services immediately upon Customer payment of Fees."

35. The CROA provides that "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under this subchapter shall be treated as a violation of this subchapter." 15 U.S.C. § 1679f(b).

36. The Credit Repair Contract includes a provision that releases Credit Exterminators from "all matters of actions, causes of action, suits, proceedings, debts, dues, contracts, judgments, damages, claims, and demands whatsoever in law or equity, for or by reason of any matter, cause, or things whatsoever as based on the circumstances of this contract."

37. The CROA provides that "[n]o services may be provided by any credit repair organization for any consumer--(1) unless a written and dated contract (for the purchase of such services) which meets the requirements of subsection (b) has been signed by the consumer." 15 U.S.C. § 1679d(a). Subsection (b) provides:

> No contract referred to in subsection (a) meets the requirements of this subsection unless such contract includes (in writing)--
> **(1)** the terms and conditions of payment, including the total amount of all payments to be made by the consumer to the credit repair organization or to any other person;
>
> **(2)** a full and detailed description of the services to be performed by the credit repair organization for the consumer, including—
>
> > **(A)** all guarantees of performance; and
> >
> > **(B)** an estimate of--
> > **(i)** the date by which the performance of the services (to be performed by the credit repair organization or any other person) will be complete; or
> > **(ii)** the length of the period necessary to perform such services;
>
> **(3)** the credit repair organization's name and principal business address; and
>
> **(4)** a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right."

38. The Credit Repair Contract does not identify the name of the credit repair organization, but instead purports to authorize both Earn and Credit Exterminators to do the acts necessary to repair or improve credit.

39. The Credit Repair Contract does not state the total amount of payments.

7

40. The Credit Repair Contract does not state an estimate of the length of time necessary to perform the credit repair services.

41. The Credit Repair Contract does not include a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature, which states: "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right."

42. The CROA at 15 U.S.C. § 1679e(b) requires that a duplicate form notice of cancellation accompany the contract, stating:

> Each contract shall be accompanied by a form, in duplicate, which has the heading "Notice of Cancellation" and contains in bold face type the following statement:
>
>> "You may cancel this contract, without any penalty or obligation, at any time before midnight of the 3rd day which begins after the date the contract is signed by you.
>>
>> "To cancel this contract, mail or deliver a signed, dated copy of this cancellation notice, or any other written notice to [name of credit repair organization] at [address of credit repair organization] before midnight on [date]
>>
>> "I hereby cancel this transaction,
>>
>> [date]
>>
>> [purchaser's signature]."

43. The Credit Repair Contract does not include a duplicate form notice of cancellation, or one that is separate from the Credit Repair Contract. Instead, a single purported "Notice of Right to Cancel" is embedded and part of the Credit Repair Contract.

44. The Credit Repair Contract does not contain a notice of cancellation in bold face type.

45. The CROA requires credit repair organizations to provide a separate disclosure of rights. 15 U.S.C. 1679c(b).

46. The Credit Repair Contract is not accompanied by a separate written disclosure of rights as set forth in 15 U.S.C. 1679c. Instead, the statement of rights is embedded and part of the Credit Repair Contract.

47. On information and belief, Defendants Earn, Credit Exterminators, Olivera, Morris, Rattray, and April have used the same or substantially similar Credit Repair Contract in all of their transactions with consumers seeking credit repair services.

48. Also included in the package of documents Ms. Atterbury was required to sign in exchange for credit repair services was a "Non-Disclosure Agreement" ("NDA") between Ms. Atterbury and Sprinkle of Jesus.

49. As stated previously, the CROA prohibits "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under this subchapter[.]" 15 U.S.C. § 1679f(b).

50. The NDA purportedly prohibits Ms. Atterbury from disclosing "all personal or professional information (Confidential Information) received from Proprietor [*i.e.* Sprinkle of Jesus] and/or Dana [*i.e.* Olivera], Majic [*i.e.* Rattray, and] Prince Donnell [*i.e.* Morris]," and it entitles Sprinkle of Jesus to seek "an immediate injunction enjoining any breach" of that agreement.

51. The NDA is an attempt by Defendants to have consumers waive CROA rights, threatening litigation against consumers as a consequence of the disclosure of any vaguely defined, purportedly confidential information.

52. On information and belief, Defendants have used the same or substantially similar NDA in all of their transactions with consumers seeking credit repair services.

53. The credit repair services provided to Ms. Atterbury did not result in any meaningful benefit for her.

54. Defendants nonetheless charged and/or received from Ms. Atterbury nearly $2,000.

55. On information and belief, Defendants failed to perform meaningful services for or improve the credit scores of countless consumers, resulting in numerous online consumer complaints.

56. Defendants knew that consumers had complained about not having obtained any increase in their credit scores, and about not obtaining any meaningful benefit from the purchased services.

57. Even so, Defendants charged and received hundreds of other consumers in amounts comparable to what they eventually charged Ms. Atterbury.

58. Defendants have engaged in a pattern and practice of deception in the sale and provision of credit repair services, which was enabled by Sprinkle of Jesus and its practice of using non-disclosure agreements to silence Defendants' victims in violation of CROA's anti-waiver provisions.

59. On information and belief, Defendants regularly purge consumer complaints from social media.

60. This lawsuit puts Defendants on notice that any further purging of consumer complaints from social media constitutes spoliation of evidence.

## CLASS ALLEGATIONS

61. Plaintiff brings this action on her own behalf and on behalf of a Class designated pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

62. Plaintiff proposes to define the Class as follows:

> All persons in the United States with whom one or more Defendants entered into a contract for credit repair services in the five years preceding the filing of the Complaint.

63. The Class is believed to be so numerous that joinder of all members is impractical, as this case concerns Defendants' use of form contract documents with respect to hundreds of consumers.

64. There are questions of law or fact common to the Class. These include:

   a. Whether Defendants' form contracts violate the CROA;

   b. Whether Defendants' form contracts are void and unenforceable;

   c. Whether Defendants charged or received upfront fees, in violation of the CROA;

   d. Whether Defendants used form contracts that required payment of upfront fees, in violation of the CROA;

   e. Whether Defendants used form contracts that attempt to waive CROA rights, in violation of the CROA;

   f. Whether Defendants used form contracts that failed to include the disclosures required by the CROA;

   g. Whether Defendants used form contracts that were not accompanied by a separate notice of cancellation in duplicate form as required by the CROA;

    h. Whether Defendants used form contracts that were not accompanied by a notice of cancellation in bold face type as required by the CROA;

    i. Whether Defendants used form contracts that were not accompanied by a separate statement of rights as required by the CROA;

    j. Whether Defendants' violations of the CROA entitle Plaintiff and the Class to actual damages under 15 U.S.C. § 1679g; and

    k. Whether and what amount of punitive damages are recoverable by Plaintiff and the Class for Defendants' violations.

65. Plaintiff's claim is typical of the claims of the Class. Plaintiff and all Class Members were required to sign illegal form contracts and pay unlawful upfront fees in exchange for credit repair services. All claims are based on the same factual and legal theories, and there are no individualized issues.

66. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to those of the Class. Plaintiff's counsel is competent and experienced in consumer credit cases and class actions.

67. The questions of law or fact common to the Class predominate over any questions affecting only individual members, as the primary focus is on Defendants' conduct and use of form contracts.

68. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class Members are consumers who wanted to improve their credit, and who may be unable to locate or afford to hire lawyers because damages in an individual case are relatively small, and not likely to exceed the threshold for small claims cases.

69. Congress specifically contemplated CROA class actions as a principal means of enforcing the statute by private attorneys general. 15 U.S.C. § 1679g(a)(2)(B).

70. This class action covering consumers for the violation of the CROA is likely to be easily manageable because Defendants are statutorily required to maintain records on consumers, making identification of Class Members a simple task.

### **COUNT I – CREDIT REPAIR ORGANIZATIONS ACT**

71. Plaintiff incorporates by reference all prior allegations as if set forth herein.

72. Defendants are "persons" as defined by the CROA.

73. Defendants are "credit repair organizations" as defined by the CROA.

74. Defendants violated the CROA by using form credit repair contracts that deceptively required payment of upfront fees, before services were fully performed, in violation of the CROA. 15 U.S.C. § 1679b(b).

75. In connection with the offer or sale of credit repair organization services, Defendants directly or indirectly engaged in acts, a practice, or a course of business that constitutes a deception on consumers and an attempt to commit a deception on consumers, in violation of the CROA. 15 U.S.C. § 1679b(a)(4). This includes but is not limited to Defendants' use of illegal form credit repair contracts to steal upfront fees from consumers that Defendants were not legally permitted to charge or receive.

76. Defendants violated the CROA by using form contracts that attempted to waive the CROA rights of Plaintiff and the Class. 15 U.S.C. § 1679f(b).

77. Defendants violated the CROA by using form credit repair contracts that did not include all the written disclosures set forth in 15 U.S.C. § 1679d(b).

78. Defendants violated the CROA by using form credit repair contracts that failed to provide a duplicate form notice of cancellation separate from the credit repair contract, and in the required format. 15 U.S.C. § 1679e(b).

79. Defendants violated the CROA by using form credit repair contracts that were not accompanied by a separate disclosure of rights. 15 U.S.C. § 1679c(b).

80. Defendants provided services despite not meeting the requirements of 15 U.S.C. § 1679d(b), which violates 15 U.S.C. § 1679d(a).

81. Defendants knew about their obligations under the CROA.

82. Defendants intentionally, willfully, and recklessly violated the CROA.

**WHEREFORE**, Plaintiff Christina Atterbury, on behalf of herself and all others similarly situated, demands judgment against Defendants for:

(a) Damages;

(b) Punitive damages;

(c) Interest;

(d) Attorney's fees and costs; and

(e) Such other and further relief as the Court shall deem just and proper.

## V. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

Date: February 10, 2021

Respectfully submitted:

CARY L. FLITTER
ANDREW M. MILZ
JODY THOMAS LÓPEZ-JACOBS
**FLITTER MILZ, PC**
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782
*Attorneys for Plaintiff and the Class*